IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| National Surety Corporation, an Illinois Corporation<br><br>        Plaintiff,<br><br>vs.<br><br>MLP Multi-Family Construction, LLC, a Missouri limited liability company; MLP Investments, LLC, a Missouri limited liability company; Pioneer Construction Inc., a Missouri corporation; CCC/MLP Westlake, LLC, a Missouri limited liability company; MLP Management, LLC, a Missouri limited liability company; Westlake Apartments, LP, a Missouri limited partnership; Pioneer Construction Services, Inc., a Missouri corporation; MLP Land Development, LLC, a Missouri limited liability company; Stan McCurdy, an individual; Joe Leibold, an individual; and John Porta, an individual,<br><br>        Defendants. | **No.:**<br><br><br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**JURY DEMAND REQUESTED** |

The plaintiff, National Surety Corporation, by and through its attorneys, Davis, Brown, Koehn, Shors & Roberts, P.C. and Hinshaw & Culbertson LLP, for its Complaint for Declaratory Relief states and alleges as follows:

## JURISDICTION AND VENUE

1.       The plaintiff, National Surety Corporation ("NSC"), is an Illinois Corporation that maintains a principal place of business in Chicago, Illinois.  NSC seeks a declaration as to its obligation, if any, to indemnify the individuals and entities it insured under an excess liability policy in the action: <u>Westlake Investments, LLC v. MLP Management, LLC, et al.</u>, venued in the United States District Court for the Southern District of Iowa, file no. 4:09-cv-00095 ("the Underlying Action").

2.      Upon information and belief, defendant MLP Multi-Family Construction, LLC is a Missouri limited liability company with its principal place of business located in Missouri.

3.      Upon information and belief, the members of MLP Multi-Family Construction, LLC are John Porta and Stan McCurdy.

4.      Upon information and belief defendant John Porta is a citizen of Missouri.

5.      Upon information and belief, defendant Stan McCurdy is a citizen of Missouri.

6.      Upon information and belief, defendant MLP Investments, LLC is a Missouri limited liability company with its principal place of business in Missouri.

7.      Upon information and belief, the members of MLP Investments, LLC are Stan McCurdy and John Porta, who, upon information and belief and as set forth in Paragraphs 4-5, supra, are citizens of Missouri.

8.      Upon information and belief, defendant Pioneer Construction, Inc. is a Missouri corporation with its principal place of business in Missouri.

9.      Upon information and belief, defendant CCC/MLP Westlake, LLC is a Missouri limited liability company with its principal place of business in Missouri.

10.      Upon information and belief, the members of CCC/MLP Westlake, LLC are MLP Westlake, LLC and Crown Capital Westlake, LLC.

11.      Upon information and belief, MLP Westlake, LLC is a Missouri limited liability company with its principal place of business in Missouri.

12.      Upon information and belief, the members of MLP Westlake, LLC are Stan McCurdy and John Porta, who, upon information and belief and as set forth in Paragraphs 4-5, supra, are citizens of Missouri.

13.     Upon information and belief, Crown Capital Westlake, LLC is a Missouri limited liability company with its principal place of business in Missouri and William Breece is its sole member.

14.     Upon information and belief, William Breece is a citizen of Florida.

15.     Upon information and belief, defendant MLP Management, LLC is a Missouri limited liability company with its principal place of business in Missouri.

16.     Upon information and belief, the members of MLP Management, LLC are John Porta and Stan McCurdy, who, upon information and belief and as set forth in Paragraphs 4-5, supra, are citizens of Missouri.

17.     Upon information and belief, defendant Westlake Apartments, LP is a Missouri limited partnership with its principal place of business in Missouri.

18.     Upon information and belief, the general partner of Westlake Apartments, LP is CCC/MLP Westlake, LLC, which, upon information and belief and as alleged in Paragraphs 9-14, supra is a citizen of Missouri.

19.     Upon information and belief, there are no limited partners of Westlake Apartments, LP.

20.     Upon information and belief, defendant Pioneer Construction Services, Inc. is a Missouri corporation with its principal place of business in Missouri.

21.     Upon information and belief, MLP Land Development, LLC is a Missouri limited liability company with its principal place of business in Missouri.

22.     Upon information and belief, the members of MLP Land Development, LLC are John Porta and Stan McCurdy, who upon information and belief and as set forth in Paragraphs 4-5, supra, are citizens of Missouri.

23.     Upon information and belief, Joe Leibold is a citizen of Missouri.

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and the Plaintiff and Defendants are citizens of different states.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(a).

## JURY DEMAND

26.     NSC demands a jury trial of any factual issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND APPLICABLE TO ALL COUNTS

27.     On information and belief, Stan McCurdy, Joseph Leibold, and John Porta are in the business of developing large multi-family apartment projects through a number of limited liability companies, including the entities named as defendants in this action.

28.     On information and belief, in 1999, William Breece, a principal of Crown Capital Management, contacted John Porta to determine if he would be interested in developing an apartment complex.  On information and belief, a joint venture was formed between Crown Capital and MLP. The joint venture resulted in the formation of CCC/MLP Westlake, LLC.

29.     On information and belief, on December 13, 2001, a contract to develop the Westlake Apartments was entered into among CCC/MLP Westlake, LLC as the owner; MLP Multi-Family Construction as the General Contractor; Pioneer Construction, Inc. as the Prime Contractor and Parker Associates as the architect.

30.     On information and belief in the spring of 2003, James Sinclair expressed an interest in purchasing the 300-unit Westlake apartment complex owned by CCC/MLP Westlake, LLC.  On information and belief, Sinclair subsequently formed an Iowa limited liability company, Westlake Investments, LLC, to acquire the complex.

31.     On information and belief, Sinclair met with McCurdy, Leibold and Porta on May 6, 2003.  In the Underlying Action, Sinclair alleges that during this meeting he was told by the MLP principals that the Westlake complex had been built to a "first class" quality construction standard.

32.     On June 3, 2003 CCC/MLP Westlake, LLC entered into an agreement to sell the Westlake Apartment complex to Westlake Investments, LLC.  At the time of the sale, CCC/MLP Westlake, LLC was leasing units to tenants.

33.     The guarantee that the apartment complex had been built to a "first class" quality standard was included in the purchase agreement that was signed on June 3, 2003.

34.     On information and belief, after the purchase agreement was executed, Sinclair's broker, inspected the property on behalf of his client and a punch list of defective work that required correction was provided to CCC/MLP Westlake, LLC.  On information and belief, the list included a reference to two units where mold had been found.

35.     On information and belief, Westlake Investments' attorney, Robert Andeweg, was directed to investigate the units where mold had been found.  On information and belief, Mr. Andeweg, on behalf of Westlake Investments, requested a list of the units that had been previously treated for mold.  On information and belief, CCC/MLP Westlake, LLC retained a firm to remediate the mold.

36.     On information and belief, on November 3, 2003, Westlake Investments presented a second punch list to CCC/MLP Westlake, LLC detailing construction related defects that are the subject of the Underlying Action.

37.     On information and belief, following the sale, Mr. Sinclair complained to the employees of Pioneer Construction about construction related defects that are the subject of the Underlying Action.

38.     On information and belief, when the allegedly defective construction was not corrected, Sinclair filed suit against MLP Management, LLC, MLP Investments, LLC, Pioneer Construction, Inc., CCC/MLP Westlake, LLC, Westlake Apartments, LLC, Joe Leibold, Stan McCurdy, John Porta, William Breece a/k/a Bill Breece, MLP Multi-Family Construction, LLC, Westlake Apartments, L.P., Pioneer Construction Services, Inc. a/k/a Amerwest Development Company, MLP Group, LLC, MLP Land Development, LLC, CCC/Westlake, LLC, and CCC/MLP Investment, LLC.

39.     In the Underlying Action, Westlake Investments complains of the following defective construction that was not remedied:

☐     Inadequate drainage due to defective grading;

☐     Delamination of the concrete in the parking areas due to compaction;

☐     Cracking of the concrete slabs on the parking areas due to improper compaction;

☐     Offset in the height of walkways and sidewalks due to improper compaction;

☐     Uneven settlement of the trash enclosure caused by improper soil preparation and inadequate footing depth;

☐     Cracking of patio slabs and condenser pads due to improper design and installation;

☐     Cracking of breezeway concrete slabs due to inadequate installation;

☐     Separation and breakage of sanitary sewer lines due to improper installation of pipes;

☐     The absence of footing on the breezeway stairs;

☐     Rusting railings on breezeway stairs due to the use of improper materials;

☐     Water leaks around windows and doors due to improper flashing and sealing;

☐    Water penetration due to improper installation of the house wrap;

☐    Water leaks due to improper installation of the band board;

☐    Water penetration due to improper installation of the vinyl siding;

☐    Water penetration caused by the use of an improper stone veneer;

☐    Inadequate wall framing resulting in bowing of the exterior;

☐    Inadequate installation of ridge caps;

☐    Excessive holes in shingles caused by poor installation;

☐    Improper installation of vent piping boots;

☐    Improper installation of chimney caps;

☐    Improper installation of rain gutters; and

☐    Inadequate roof framing resulting in bowing.

40.    According Westlake Investment's expert in the Underlying Action, the defects evidence: "[a]n overall disregard for quality of workmanship and lack of attention to exterior water drainages, sealing of penetrations, flashing of windows, water-resistant barrier installation, cultured stone installation and vinyl siding installation has caused substantial damage."

41.    The Amended Complaint in the Underlying Action included the following counts:

☐    Count I – Breach of Express Contract Against All Defendants;

☐    Count II – Breach of Express Contract Against McCurdy, Leibold and Porta;

☐    Count III – Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants;

☐    Count IV – Promissory Estoppel Against All Defendants;

☐    Count V - Fraudulent Misrepresentation Against All Defendants; (based on the alleged misrepresentation of "first class" quality construction);

☐    Count VI - Fraudulent Misrepresentation Against McCurdy, Leibold and Porta (based on their alleged promise to stand behind the representation of "first class" quality construction);

☐     Count VII - Equitable Fraud Against All Defendants (based on the alleged misrepresentation of "first class" quality construction and the failure to disclose the true quality of the construction);

☐     Count VIII - Constructive Fraud Against All Defendants (based on the failure to disclose the true quality of the construction);

☐     Count IX - Fraudulent Concealment Against All Defendants (based on the failure to disclose the true quality of the construction and the undercapitalization of the MLP entities involved);

☐     Count X – Negligence Against All Defendants; and

☐     Count XI – Breach of Contract Against Pioneer Construction, Inc., and MLP Multi-Family Construction Inc.

A true and correct copy of the Amended Complaint in the Underlying Action is attached as **Exhibit A** to this Complaint.

42.     On January 26, 2011, the Court in the Underlying Action issued a ruling on Defendants' Motion to Dismiss dismissing Count X – Negligence Against All Defendants.

43.     On May 10, 2011, the Court issued a ruling on the Motion for Partial Summary Judgment filed on behalf of the Defendants.  As a result of the Court's ruling on the Motion for Partial Summary Judgment, the following claims remain in the Underlying Action:

☐     Count I – Breach of Express Contract Against CCC/MLP Westlake, LLC only;

☐     Count II – Breach of Express Contract Against McCurdy, Leibold and Porta;

☐     Count III – Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants;

☐     Count IV – Promissory Estoppel Against McCurdy, Leibold and Porta only;

☐     Count VI - Fraudulent Misrepresentation Against McCurdy, Leibold and Porta (based on their alleged promise to stand behind the representation of "first class" quality construction);

☐     Count VII - Equitable Fraud Against All Defendants (based on the alleged failure to disclose the true quality of the construction);

☐     Count VIII - Constructive Fraud Against All Defendants (based on the failure to disclose the true quality of the construction);

☐    Count IX - Fraudulent Concealment Against All Defendants (based on the failure to disclose the true quality of the construction and the undercapitalization of the MLP entities involved); and

☐    Count XI – Breach of Contract Against Pioneer Construction, Inc., and MLP Multi-Family Construction Inc.

## THE COVERAGE

44.    For the policy period July 1, 2003 to July 1, 2004, NSC provided excess liability coverage to MLP Multi-Family Construction, LLC as the first named insured.  The coverage was provided through policy number XEK-000-8560-3421 and was subject to a $20,000,000 limit of liability that applied to each occurrence and in the aggregate.  A true and correct copy of the NSC policy, filed by the Underlying Defendants in connection with their Motion for Partial Summary Judgment, is attached as **Exhibit B** to this Complaint.  The Named Insureds under the NSC policy included: MLP Multi-Family Construction, MLP Investments, LLC; Pioneer Construction Inc.; CCC/MLP Westlake, LLC; MLP Management, LLC; Pioneer Construction Services, Inc.; and MLP Land Development, LLC.

45.    The NSC policy incorporates by reference certain terms and conditions of a commercial general liability policy issued by Arch Specialty Insurance Company ("Arch").  A true and correct copy of the Arch policy is attached as **Exhibit C** to this Complaint.

46.    For the policy period July 1, 2003 to July 1, 2004 Arch issued a Commercial General Liability Self-Insured Retention policy to MLP Multi-Family Construction, LLC as the first named insured through policy number 32 GPP 14025 00.  On information and belief, the following entities qualified as Named Insureds under the Arch policy: MLP Multi-Family Construction, MLP Investments, LLC; Pioneer Construction Inc.; CCC/MLP Westlake, LLC; MLP Management, LLC; Pioneer Construction Services, Inc.; and MLP Land Development,

LLC.   On information and belief, a true and correct copy of the Schedule of Named Insureds under the Arch policy is attached as **Exhibit D** to this Complaint.

47.     The Arch policy is subject to a $1,000,000 bodily injury and property damage limit of liability for each occurrence and a $2,000,000 products-completed operations aggregate limit of liability.   The limit of liability is in excess of the $25,000 Self-Insured Retention. (Exhibit C).

48.     The insuring agreement to the Arch policy, provided:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.   The words "we" and "our" refer to the Company providing this insurance.

(Exhibit C).

49.     The Insuring Agreement to the Arch policy provides:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE**

**1.      Insuring Agreement**

**a.**      We will pay those sums in excess of the "Self-Insured Retention" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in **SECTION V – SUPPLEMENTARY PAYMENTS**.   This Insurance applies only to "bodily injury" and "property damage" which occurs during the policy period.   The "bodily injury" and "property damage" must be caused by an "occurrence".   The "occurrence" must take place in the "coverage territory".   The amount we will pay for damages is limited as described in **SECTION IV – LIMITS OF INSURANCE**.

**b.**      Rights and duties relating to the defense, settlement, and investigation of claims or "suits" to which this policy may apply are set forth in **SECTION II – DEFENSE, SETTLEMENT AND INVESTIGATION OF CLAIMS AND "SUITS".**

(Exhibit C).

50.     The Arch policy defines the term "property damage" in relevant part as follows:

**18.**     "Property damage" means:

    **a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of physical injury that caused it; or

    **b.**     Loss of use of tangible property that is not physically injured.  All such loss will be deemed to occur at the time of the "occurrence" that caused it.

. . .

(Exhibit C).

51.     The Arch policy defines the term "occurrence" as follows:

**14.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Exhibit C).

52.     No damages are sought in the Underlying Action for "property damage" caused by an "accident".  In the Underlying Action Westlake Investments is seeking to recover for an economic loss resulting from a breach of contract and allegedly defective construction that diminished the value of the property purchased from the named insured CCC/MLP.

53.     The Arch policy incorporates the following provision:

**SECTION III – WHO IS AN INSURED**

**1.**     If you are designated in the Declaration as:

    **a.**     An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are sole owner.

    **b.**     A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**    A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

. . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

(Exhibit C).

54.    The individual defendants Stan McCurdy, Joe Leibold and John Porta do not qualify as insureds for damages awarded against them in their individual capacity or for damages awarded for fraud.

55.    None of the Defendants qualify as an insured for liability arising out of the joint venture between: MLP Multi-Family Construction LLC and Crown Capital.

56.    The Arch policy also incorporates the following exclusion:

**2.**    **Exclusions**

    This insurance does not apply to:

. . .

**j.**    **Damage to Property**

    "Property damage" to:

**(1)**    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

. . .

**(6)**   That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

**Paragraph (1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.   A separate limit of insurance applies to Damages To Premises Rented To You as described in **SECTION IV – LIMITS OF INSURANCE**.

**Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

. . .

**Paragraph (6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

(Exhibit C).

57.   Exclusion j. precludes coverage for any "property damage" to the Westlake Apartment project.   CCC/MLP is a named insured under the Arch policy.   Exclusion j.(1) precludes coverage for all damages to property owned by a named insured.   Exclusion j.(2) precludes coverage for all damages arising out of the premises which were held for rental by a named insured.   Exclusion j.(6) also precludes coverage for any "property damage" sustained prior to the time the project was completed.

58.   The Arch policy incorporates the following exclusion:

**2.      Exclusions**

This insurance does not apply to:

. . .

**l.      Damage to "your work"**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operation hazard".

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Exhibit C).

59.     The Westlake Apartment project was the work of the general contractor, MLP Multi-Family, and the prime contractor, Pioneer Construction.  Exclusion l. precludes coverage for any property damage to the Westlake Apartment project because the development was the work of MLP Multi-Family and Pioneer Construction.

60.     The Arch policy incorporates the following exclusion:

**2.      Exclusions**

> This insurance does not apply to:
>
> . . .
>
> **m.      Damage to Impaired Property or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)**      A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or
>
> **(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Exhibit C).

61.     The Arch policy defines "impaired property" as follows:

**9.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

> **a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

      **b.**      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

      **a.**      The repair, replacement, adjustment, or removal of "your product" or "your work"; or

      **b.**      Your fulfilling the terms of the contract or agreement.

(Exhibit C).

62.      Exclusion m. precludes coverage for all of the damages sustained in the Underlying Action attributable to the failure of the Named Insureds to fulfill the terms of a contract or agreement.

63.      Through an endorsement, the Arch policy incorporates the following exclusion:

**PROPERTY DAMAGE TO CONSTRUCTION PROJECTS EXCLUSION**

It is hereby agreed that the following exclusion is added to the policy:

This insurance does not apply to property damage to the "project" or any part of the "project" that occurs during the course of construction.  The project or part of the project will be deemed to be within the course of construction until it satisfies the definition of "products-completed operations hazard" as defined in this endorsement.

A.      The definition of "products-completed operation hazard is deleted and replaced by the following:

      a.      "Products-completed operations hazard" includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

            i.      Products that are still in your physical possession; or

            ii.      Work that has not yet completed or abandoned.

      b.      "Your work" will be deemed completed at the earliest of the following times:

            i.      Completion and acceptance of the entire "project" by all parties designated in its construction agreement;

      ii.     When all of the work to be done at the site has been completed if the "project" calls for work at more than one site;

      iii.     When that part of the work done at the "project" has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same "project;" or

Work that may need service maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

All other terms and conditions of this policy remain unchanged.

(Exhibit C).

64.     The Property Damage to Construction Projects exclusion precludes coverage for all damages attributable to defective construction.

65.     The Arch policy incorporates the following Subcontractor Endorsement:

**SUBCONTRACTOR ENDORSEMENT: EXCESS COMMERCIAL. GENERAL LIABILITY VERSION**

The Conditions of this policy are amended to include the following:

1.     Certificates of Insurance for Commercial General Liability coverage, with limits at least equal to or greater than those limits provided by this policy, will be obtained by the Named Insured from all "subcontractors" prior to commencement of any work performed for any insured.

2.     The Named Insured will obtain agreements, in writing, from all "subcontractors" pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold harmless the Named Insured, and any other insured under the policy for whom the "subcontractor" is working for any claim or "suit" for "bodily injury", "property damage", and "personal injury and advertising injury" arising out of the work performed by the "subcontractor."

3.     The Named Insured, and any other insured under the policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(s).

4.     For items 1. through 3. above, documentation will be retained for a minimum of eight years from the expiration date of this policy.

If any one of the any of the above conditions, are not satisfied, the Self Insured Retention will be increased to $250,000 per "occurrence" or offense for any claim or "suit" under this policy seeking damages for "bodily injury", "property damage," and "personal injury and advertising injury" arising out of the work performed by the "subcontractor" for the insured.

For the purposes of this endorsement only, "subcontractor" or "subcontractors" means any person or entity who is not an employee of an Insured and does work or performs services for or on behalf of the Insured.

All other terms and conditions of this Policy remain unchanged.

(Exhibit C).

66.     On information and belief the Named Insureds did not comply with the terms of the subcontractor endorsement.  Accordingly, the insureds would be required to pay $250,000 for any damages covered under the policy before Arch could have any obligation to pay.

67.     The insuring agreement that applies to the NSC policy provides in relevant part:

**SECTION I – COVERAGES**

This coverage only applies to injury or damage covered by the **Primary Insurance**.  The definitions, terms, conditions, limitations and exclusions of the **Primary Policies**, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy or relate to premium, subrogation, other insurance, an obligation to investigate or defend, the amount or limits of insurance, payment of expenses, cancellation or any renewal agreement.

Subject to the other provisions of this policy, **We** will pay on behalf of the **Insured** those sums in excess of **Primary Insurance** that the **Insured** becomes legally obligated to pay as damages.  The amount **We** will pay for damages is limited as described in SECTION III-LIMITS OF INSURANCE.

**A.     OCCURRENCE FORM**

If a **Primary Policy** applies on the basis of injury or damage which occurs during the period of that policy, then this coverage shall only apply on the same basis and in a like manner to injury or damage which occurs during **Our** Policy Period.

(Exhibit B).

68.     The NSC policy incorporates by reference the terms, exclusions and limitations identified in the preceding paragraphs.

69.    The NSC policy incorporates the following exclusion:

This Policy Does Not Apply:

**H.    PROPERTY DAMAGE** – To damage to or loss of use of (1) property owned by the **Insured** or purchased by the **Insured** under an installment sales contract or on consignment to the **Insured**, (2) any product manufactured, sold, handled or distributed by or for the **Named Insured** if arising out of such product or any part thereof, (3) work performed by **You** if arising out of the work or any portion of it, or out of materials, parts or equipment furnished in connection with it, . . .

(Exhibit B).

70.    Exclusion H. precludes coverage for any damage to or loss of use of the Westlake Apartment project which was owned by the insured CCC/MLP Westlake, LLC.  Exclusion H. precludes coverage for any damage to or loss of use of the Westlake Apartment project attributable to products that were handled by MLP Multi-Family Construction or Pioneer Construction.  Exclusion H. precludes coverage for any damage to or loss of use of the Westlake Apartment project which constitutes the work of the general contractor MLP Multi-Family Construction, LLC and Pioneer Construction.

71.    The NSC policy contains the following exclusion:

**Architectural, Engineering, Surveying and Other Professional Services Exclusion – 178304 11 89R**
Excess Liability Policy

The policy does not apply to any liability arising out of the rendering of or failure to render any professional services, including but not limited to:

A.    Architectural, engineering or surveying services;

B.    The preparation, approval, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

C.    Supervisory or inspection services; or

D.    Feasibility studies, cost estimating or soil tests.

All other terms and conditions of the policy remain unchanged.

18

(Exhibit B).

72.     The Architectural, Engineering, Survey and Other Professional Services exclusion precludes coverage for damages caused by improper compaction, grading, pipe placement and other construction defects attributable to the design of the project including the use of inappropriate materials.

73.     The NSC policy incorporates the following exclusion:

**Fungi or Bacteria Exclusion – 178950 04 02R**
Policy Amendment – Umbrella Policy – Excess Liability Policy

The policy does not apply to:

A.      Any claims or liability arising, in whole or in part, out of, resulting from, caused by, or in any way related to "fungi" or bacteria; or

B.      The cost to test for, monitor, abate, mitigate, remove, dispose of or remediate "fungi" or bacteria.

This exclusion applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to such liability.  However, this exclusion does not apply to bacteria that is, is on, or contained in, a good or product intended for human ingestion.

"Fungi" is defined to include but is not limited to fungus, mildew, mold or resulting spores and byproducts, including mycotoxins or allergens.  However, "fungi" does not include "fungi" intended for human ingestion.

All other terms and conditions of the policy remain unchanged.

(Exhibit B).

74.     The Fungi exclusion precludes coverage for any damages attributable to mold.

75.     The NSC policy incorporates the following condition:

**J.      OTHER INSURANCE**

If there is any (1) **Other Insurance**, or (2) insurance available to the **Insured** on an extended reporting period basis under either a **Primary Policy** or **Other Insurance**, or (3) insurance available to the **Insured** on a retroactive basis under either a **Primary Policy** or **Other Insurance**, this policy shall apply as excess of and not contributory with such insurance.

> If the **Insured** has another Excess Liability Policy with **Us** (other than a policy issued to apply specifically excess of this policy) which provides coverage for a claim also covered by this policy, the **Insured** must elect which policy shall apply.  **We** shall be liable under the policy so elected and shall not be liable under any other policy.

(Exhibit B).

76.     The NSC policy is excess to any underlying applicable insurance.

## COUNT I – DECLARATORY RELIEF

77.     NSC realleges and incorporates by reference the allegations contained in paragraphs 1-76 of this Complaint.

78.     There is a real and justiciable controversy between NSC and the Defendants concerning the existence and extent of insurance coverage for the damages sought in the Underlying Action.

79.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Breach of Express Contract.

80.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants.

81.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Promissory Estoppel.

82.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Fraudulent Misrepresentation.

83.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Equitable Fraud.

84.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Constructive Fraud.

85.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Fraudulent Concealment.

86.     NSC seeks a declaration that the NSC policy does not provide coverage for damages awarded in the Underlying Action for Breach of Contract.

87.     NSC seeks a declaration that NSC has no obligation to indemnify the insureds unless and until all other applicable self insurance and other insurance has been exhausted by the payment of covered damages.

88.     NSC seeks a declaration that the damages sought in the Underlying Action were not the result of "property damage" caused by an "occurrence" as required by the applicable insuring agreement.

89.     NSC seeks a declaration that none of the Defendants qualify as insureds under the NSC policy because their liability is the result of a joint venture with Crown Capital which was not included as an insured under the Arch or NSC policies.

90.     NSC seeks a declaration that Stan McCurdy, Joe Leibold, John Porta and do not qualify as insureds under the NSC policy for any damages awarded against them in their individual capacity.

91.     NSC seeks a declaration that exclusion j. to the Arch policy precludes coverage under the NSC policy for the damages sought in the underlying action.

92.     NSC seeks a declaration that exclusion l. to the Arch policy precludes coverage under the NSC policy for the damages sought in the underlying action.

93.     NSC seeks a declaration that exclusion m. to the Arch policy precludes coverage under the NSC policy for the damages sought in the underlying action.

94.     NSC seeks a declaration that the Property Damage to Construction Projects exclusion to the Arch policy precludes coverage under the NSC policy for the damages sought in the underlying action.

95.     NSC seeks a declaration that the Subcontractor Endorsement obligates the insureds to pay $250,000 toward any covered damages before Arch would have any obligation to pay.

96.     NSC seeks a declaration that exclusion H.(1); H.(2); and H.(3) to the NSC policy preclude coverage for the damages sought in the underlying action.

97.     NSC seeks a declaration that the Architectural, Engineering, Surveying and Other Professional Services Exclusion in the NSC policy precludes coverage for the damages sought in the underlying action.

98.     NSC seeks a declaration that the Fungi or Bacteria Exclusion precludes coverage for the damages sought in the Underlying Action.

99.     In the alternative, NSC seeks a declaration that it is excess to any underlying applicable insurance.

## **RELIEF REQUESTED**

**WHEREFORE**, NSC respectfully requests:

1.     the declaratory relief described in paragraphs 79-99; and

2.     such further relief to which National Surety Corporation may be entitled and which the Court may deem just and proper.

/s/Stanley J. Thompson
Stanley J. Thompson, AT 00007811
DAVIS, BROWN, KOEHN, SHORS &
ROBERTS, P.C.
215 10th Street, Suite 1300
Des Moines, Iowa 50309
Telephone:  515-288-2500
Facsimile:  515-243-0654
E-mail:  StanThompson@davisbrownlaw.com

Bethany K. Culp
HINSHAW & CULBERTSON LLP
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Phone No.:  612-333-3434
Fax No.:  612-334-8888
bculp@hinshawlaw.com

ATTORNEYS FOR PLAINTIFF